IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UTILITY WORKERS UNITED ASSOCIATION, LOCAL 537, | ) ) | No. 2:19-CV-1077-LPL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| UTILITY WORKERS' UNION OF AMERICA, AFL-CIO, et al., | ) ) | |
| | ) | |
| Defendants. | ) | ECF Nos. 63, 67 |

**MEMORADUM OPINION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Pending before the Court are Cross Motions for Summary Judgment filed by (a) Plaintiff Utility Workers United Association, Local 537 ("Independent 537") at ECF No. 63 and (b) Defendants Utility Workers Union of America, AFL-CIO ("UWUA"); Utility Workers Union of America, AFL-CIO, Local 537 ("UWUA 537"); and D. Michael Langford ("Langford"), Michael Coleman ("Coleman") and John Duffy ("Duffy") at ECF No. 67. The parties' dispute principally concerns entitlement to the books, accounts, investments and other property (the "Assets") of the now-dissolved UWUA 537.

Plaintiff seeks summary judgment on the grounds that it is the "successor" of UWUA 537, and representative of the beneficial interests of UWUA's former members. Defendants seek summary judgment on the grounds that UWUA is entitled to the assets pursuant to a "forfeiture" provision in UWUA's Constitution, and that Plaintiff lacks standing to assert the interests of UWUA 537 or its former members. For the reasons below, Plaintiff's Motion will be

granted in part and denied in part; Defendants' Motion will be denied; and the Court will order an equitable distribution of the Assets.

## I.    **Factual Background**

Defendant UWUA is a national labor organization comprised of local affiliates who collectively represent about 50,000 utility workers across the United States.  The structure and management of UWUA, and its relations with its affiliates, are governed by a Constitution as amended through July 25, 2015 (the "Constitution").[1]  Defendants Langford, Duffy and Coleman are (and at all relevant times were) President, Vice President and Secretary-Treasurer of UWUA.

As of early 2018, UWUA 537 was a local labor organization affiliated with UWUA, comprised of about 640 employees organized in 28 Districts representing about 21 bargaining units in Pennsylvania, Maryland and West Virginia.  The structure and management of UWUA 537 were governed by a Constitution, Bylaws and Rules of Order last revised March 4, 2012 (the "Bylaws").[2]  About 600 of UWUA 537's members were employed by subsidiaries of American Water Works, and the rest by various municipalities and water authorities.

Since about 2016, UWUA 537 and UWUA had been at odds over UWUA 537's attempts to withdraw from participation in a National Benefits Agreement negotiated between UWUA and American Water.  In January, 2018 UWUA 537's Executive Board determined to conduct a vote of UWUA 537's membership concerning whether UWUA 537 should disaffiliate from UWUA.

---

[1] ECF No. 69-1, Appx. Ex. A.  References herein to lettered exhibits designate exhibits to Defendants' Appendix, ECF No. 69.  References to numbered exhibits designate exhibits to Plaintiff's Appendix, ECF No. 66.

[2] ECF No. 66-10, Appx. Ex. 7.

In preparation for potential disaffiliation, the officers of UWUA 537 formed Independent 537 as an unincorporated association with a very similar name to that of UWUA 537, and with the same officers (but initially no other members) and virtually identical Bylaws.[3]  The officers sought and obtained a taxpayer identification number ("TIN") for the new organization.

Notices of meetings to be held on March 19, 2018 were posted on March 2, and revised notices were posted on March 14 disclosing the meetings would "focus around . . . Disaffiliation Discussion and Vote".  About half of UWUA 537's members attended meetings on March 19, 2018, during which nearly 90% of those voting – 285 of 320 – voted to "approve the disaffiliation of Utility Workers Union of America, System Local 537 from the Utility Workers Union of America, AFL-CIO and to be represented by the independent labor organization known as the **Utility Workers United Association, System Local 537**."[4]  On March 21, 2018, UWUA 537 notified UWUA of the result of the disaffiliation vote.

UWUA learned of UWUA 537's impending disaffiliation election on March 16, 2018.[5]  On March 18, 2018, in a conference call with UWUA's Executive Committee, pursuant to Art. IV, Sec. 6-B of the Constitution, Langford declared an emergency trusteeship of UWUA 537 and appointed Duffy as Trustee, effective March 19, 2018.[6]  On March 19 – the same day as UWUA 537's disaffiliation vote – Langford sent out notices of the trusteeship to UWUA 537's officers and members, in which he stated that "all moneys, books and property of the Local . . . must be

---

[3] Plaintiff's Bylaws differ from those of UWUA 537 in that the former omit Article 27 of the latter, which forswears any conflict with the Constitution.

[4] ECF No. 66-16, Appx. Ex. 12 (emphasis in original).

[5] ECF No. 69-4, Appx. Ex. D at 8.

[6] ECF No. 69-4, Appx. Ex. D at 2; ECF No. 69-12, Appx. Ex. L at ¶¶ 35-36; ECF No. 66-12, Appx. Ex. 9 at 1.

turned over to the Trustee", and that "[a]ll Local 537 System and District Officers are hereby removed".  So far as the record reflects, Duffy did not take any action as Trustee on March 19, 2018.

The officers of UWUA 537 initially refused to cooperate with the trusteeship, either by refraining from acting as officers or by turning over UWUA 537's property to Duffy.  On March 28, 2018 UWUA filed an action (the "Trusteeship Action")[7] in this Court against UWUA 537 and its officers, seeking this Court's aid in enforcing the trusteeship.  On April 19, 2018, upon consent of all parties, this Court entered a preliminary injunction (the "Preliminary Injunction") directing UWUA 537's officers to turn over UWUA 537's property to Duffy and to refrain from acting as officers of UWUA 537.[8]  The Preliminary Injunction took effect on April 24, 2018, upon UWUA's posting of a required bond.[9]  Thereafter, Duffy took possession of UWUA 537's books, accounts, investments and other property, and proceeded to manage the affairs of UWUA 537.  The Preliminary Injunction remained in effect until the action was dismissed by order dated March 6, 2019, upon stipulation of all parties.

Between April 10 and July 30, 2018 employees in the Pittsburgh and Outside Districts of the Pennsylvania American Water Company and the Huntington and Northern Districts of the West Virginia American Water Company filed representation petitions with the National Labor Relations Board ("NLRB"), seeking to certify Independent 537 as collective bargaining representative for their bargaining units in place of UWUA 537.  Following representation

---

[7] The Trusteeship Action, *Utility Workers of America, AFL-CIO v. Booth*, was docketed at No. 2:18-CV-00398-DSC.  *See* ECF No. 69-12, Appx. Ex. L (Complaint).

[8] ECF No. 69-13, Appx. Ex. M.

[9] *See* ECF No. 69-13, Appx. M at 3; ECF No. 17 in *Booth*, *supra* n.7.

elections, between August 24 and December 29, 2018 the NLRB certified Independent 537 as collective bargaining representative in each of the districts.  Although Independent 537 contended that unexpired collective bargaining agreements negotiated by UWUA 537 for the affected bargaining units remained in effect, both the NLRB and the Third Circuit held that the representation elections terminated those agreements as a matter of law.  *See* ECF No. 69-9, Appx. Exs. I-1, I-3.

In or about November, 2018, UWUA issued a charter for a new UWUA Local 648, comprised of the members of three American Water bargaining units which had been part of UWUA 537. [10]  In or about April, 2019, UWUA merged the remaining bargaining units represented by UWUA 537 into UWUA Local 433.

By May 8, 2019, all of the bargaining units previously represented by UWUA 537 had been transferred (either to Independent 537, to Local 648 or to Local 433).  On that day, UWUA declared the trusteeship to be canceled and revoked UWUA 537's charter.  Thereafter, all remaining assets of UWUA 537 were transferred to UWUA.

## II.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

---

[10] *See* ECF No. 68, Defendants' Concise Statement of Undisputed Material Facts ¶ 22 ("In November 2018, three bargaining units in UWUA Local 537 representing workers at American Water applied to the UWUA National Union to be chartered as a new, separate UWUA local . . . . . The National President, Secretary-Treasurer and Executive Board approved the request and UWUA Local 648 was chartered for those three bargaining units in November 2018."); ECF No. 77 (admitting Defendants' ¶ 22).  *Cf.* ECF No. 69-5, Appx. Ex. E (Local 648 Charter, dated October 29, 2018).

motion only), admissions, interrogatory answers, or other materials," show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (a) & (c)(1)(A). "There is 'genuine' dispute of 'material fact' when 'a reasonable jury could return a verdict for the non-moving party.'" *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Anderson v. Liberty-Lobby, Inc*., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non- movant's burden of proof. *Id*. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)). In *Anderson*, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id*. at 249-50 (internal citations omitted).

## III.   Analysis

### A.  Overview

In view of the dissolution of UWUA 537 and the dispersion of its members, the principal remaining matter of dispute between the parties concerns disposition of UWUA 537's Assets.

UWUA contends that it is entitled to retain the Assets in its own right by operation of a purported forfeiture clause in Art. VIII, Sec. 4 of the Constitution.  As explained below, the Court must reject this contention because it finds that UWUA 537 effectively disaffiliated from UWUA pursuant to its vote on March 19, 2018, and thereby terminated UWUA's rights as to UWUA 537 and its property.  Moreover, as further explained below, UWUA's utilization of a trusteeship to secure the Assets for itself violates both Sections 303 and 501 of the Labor-Management Reporting and Disclosure Act of 1959, as amended ("LMRDA"), 29 U.S.C. §§ 463, 501.

For its part, Plaintiff contends that it is entitled to the Assets as successor to UWUA 537. Although Plaintiff has not established that it is a legal successor, the Court finds that Plaintiff is entitled to represent the collective interests of the members of Independent 537 who previously were members of UWUA 537, and that those members became entitled to a share of the Assets upon UWUA's dissolution.  Accordingly, the Court will fashion an equitable remedy which awards the Assets proportionately to the current representatives of the membership of UWUA 537.

### B.  Disaffiliation

#### 1.  Right to Disaffiliate

First, UWUA 537 had a right to disaffiliate from UWUA.  There is no provision in either the Constitution or the Bylaws that purports to preclude, limit or condition UWUA 537's disaffiliation from UWUA.  As a result, under traditional contract principles, UWUA 537 had an unfettered right to elect disaffiliation at any time.  "The rule is that the relationship between a local and an international is a voluntary one, and in the absence of a contractual agreement to the contrary, the local is free to withdraw from the international at will."  *Int'l Bhd. of Pulp, Sulphite*

& *Paper Mill Workers, AFL-CIO v. Delaney*, 73 Wash. 2d 956, 969, 442 P.2d 250, 258 (1968).[11]

"In the absence of express constitutional language concerning prohibitions on disaffiliation, it would be improper to infer that such proscriptions exist." *Loc. 450 v. Int'l Union of Elec. Workers*, 30 F. Supp. 2d 574, 579 (E.D.N.Y. 1998).[12]

### 2. Effectiveness of Disaffiliation

Second, the membership of UWUA 537 effectively disaffiliated their local from UWUA by their vote on March 19, 2018.[13]  There is no provision in either the Constitution or the Bylaws that prescribes procedures to be followed to effectuate a disaffiliation.  In the absence of such a provision, all that is required is a procedure fairly calculated to reflect the actual will of

---

[11] *See* also *Delaney*, 73 Wash. 2d at 970, 442 P.2d at 259 ("In the absence of enforceable provisions in the parent union's constitution which prevent disaffiliation of a local union intact with its property, a local union by a majority vote may sever its relationship with the parent union and, taking its property with it, may remain independent or seek a new affiliation."); *Vilella v. McGrath*, 136 Conn. 645, 652, 74 A.2d 187, 190 (Conn. 1950) ("The local is an autonomous, independent entity temporarily affiliated with the International. The relationship may be terminated at the will of either.  . . . .  The local may withdraw from the International. The affiliation of the local with the International is in no way necessary to the existence and operation of the local."); *Brewery Workers v. Becherer*, 142 N.J. Eq. 561, 567, 61 A.2d 16, 20 (Ch. 1948), aff'd, 4 N.J. Super. 456, 67 A.2d 900 (App. Div. 1949) ("[T]he local unions are the constituent units in a confederation comprising the international. That confederation is a voluntary one and any local union is free to withdraw from the alliance."); *State Council Junior Order of United American Mechanics v. Emery*, 219 Pa. 461, 467, 68 A. 1023 (1908) ("the majority of a society have generally the right to cut loose from a superior governing body") (quoting 1 Bacon on Benefit Societies § 116 (1904)).

[12] In particular, provisions in the Constitution requiring UWUA's approval for changes to UWUA 537's Bylaws do not give rise to an implied prohibition against disaffiliation. *See Harker v. McKissock*, 1 N.J. Super. 510, 531, 62 A.2d 405, 415 (Ch. Div. 1948) ("Article III, Sec. 3 of the constitution of the National requiring approval by it of the by-laws of the Local does not preclude the Local from severing its connections with the National.").

[13] As discussed below, whether the disaffiliation was effective immediately upon tabulation of the vote, or took effect upon notice to UWUA two days later, is ultimately of no moment to the issues in this case.

membership by providing reasonable notice of the election meetings and their purpose.  *See Vilella v. McGrath*, 136 Conn. 645, 649–50, 74 A.2d 187, 189 (Conn. 1950) ("Reasonable notice of the time, place and object of the special membership meetings of the locals was necessary in the absence of any specific requirement.  . . . .  The notice sufficiently describes the object of the meeting if it states what is fairly intended, even though that be without technical nicety.");  *Harker v. McKissock*, 1 N.J. Super. 510, 529–30, 62 A.2d 405, 414–15 (Ch. Div. 1948) (finding procedure sufficient where (as here) a "second notice . . . apprised the membership of what was intended to be deliberated upon", and no members testified that they were "misled or unadvised of the purpose to consider disaffiliation" or that their "failure to attend the meeting was occasioned by an alleged faulty notice").  Moreover, even "[f]ailure to comply strictly with procedural provisions of a local union constitution does not render union action void so long as the 'due process' requirements of the LMRDA are satisfied."  *Loc. 450*, 30 F. Supp. 2d at 583 (upholding disaffiliation vote where "plaintiffs provided actual notice of the disaffiliation meeting to the entire membership of Local 450 by mail, by hand and by phone.").[14]

### 3.  Effect of Trusteeship on Disaffiliation

Third, UWUA's near-simultaneous declaration of a trusteeship did not serve to prevent UWUA 537's disaffiliation.  The parties disagree as to whether the trusteeship became effective before the disaffiliation, or *vice versa*.  Defendants assert that "[t]he trusteeship was effective immediately at 12:01 a.m. March 19, 2018,[15] and at that point, pursuant to the UWUA

---

[14] *But cf. Boilermakers v. Loc. Lodge D474*, 673 F. Supp. 199, 203–04 (W.D. Tex. 1987) (holding disaffiliation vote upon two days notice, with only one-third of local members in attendance, inadequate to remove international union as certified bargaining representative).

[15] The Constitution is silent as to when a trusteeship takes effect.  The trusteeship might plausibly be deemed effective immediately upon the UWUA President's appointment of a trustee, as Defendants suggest, or its effectiveness may depend upon delivery of notice to the

Constitution, the former officers of UWUA Local 537 were removed and the Local was under the control of the trustee."  ECF No. 74, Defendants' Response to Plaintiff's Memorandum of Law in Support of Summary Judgment, ("Defendants' Response") at 3.  However, Defendants proffer no reason or authority supporting their assertions as to the automatic removal of officers and transfer of control.  Under Art. IV, Sec. 6-B (2) of the Constitution, the trustee "shall be *authorized* to take full charge of the affairs of the local union", and "*may* remove any or all officers" (emphasis added).  This permissive language is inconsistent with Defendants' assertion that the transfer of control happened immediately upon imposition of the trusteeship, without requiring any action by the trustee.  Moreover, Langford's statement in his March 19, 2019 Notice of Emergency Trusteeship to the effect that "[a]ll Local 537 System and District Officers are *hereby* removed" (Appx. Ex. C (emphasis added)) is also inconsistent with Defendants' contention that the officers had already been removed by operation of the Constitution.[16]

Defendants further assert that, following the supposed automatic transfer of control, "[a] disaffiliation vote could not occur unless the trustee granted permission."  ECF No. 74, Defendants' Response at 3.  Once again, nothing in the Constitution, or elsewhere in the record, supports this assertion.  Under Art. IV, Sec. 6-B, the powers reposed in the trustee may be extensive – or even plenary – but they are permissive.  Absent some act by the trustee, the mere

---

officers and members of the trusteed local.  Because, as discussed below, the Court finds that the disaffiliation vote was effective whether or not it was preceded by the trusteeship (and the trusteeship ultimately became effective whether or not it was preceded by the disaffiliation), it is unnecessary to decide when the trusteeship took effect.

[16] The Court notes that Langford's purported removal of UWUA 537's officers by his own decree was contrary to Art. IV, Sec. 6-B (2), which reposes authority for such removal solely in the trustee (*i.e.*, Duffy).  *Cf.* 29 U.S.C. § 462 ("Trusteeships shall be . . . administered . . . only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body . . . .").

imposition of a trusteeship does not serve to stop the affairs of the trusteed local in their tracks. In point of fact, a disaffiliation vote not only could, but did occur – and there is nothing in the record to indicate that the vote was taken in defiance of any decree on Duffy's part.

### 4.  Applicability of Forfeiture Clause to Disaffiliation

Fourth, UWUA 537's disaffiliation did not trigger any forfeiture of its assets pursuant to the Constitution.  Defendants argue that "if the disaffiliation vote was valid, . . . pursuant to the UWUA Constitution, UWUA's assets forfeit to the National Union."  ECF No. 74, Defendants' Response at 4.  The purported "forfeiture" provision upon which Defendants rely provides:

> In the event that a local union's charter is revoked, or the local union disbands, the charter and all books, monies, and property shall be delivered and turned over to the National Union through the office of the National Secretary-Treasurer within ten (10) days after demand by the National Executive Board.

Constitution Art. VIII, Sec. 4.  It cannot be maintained factually that UWUA 537's charter was revoked or that UWUA 537 disbanded at the time of the disaffiliation vote in March, 2018.  On the contrary, Defendants have expressly averred that both the revocation and the disbandment occurred over a year later.[17]  Rather, the Court understands Defendants to contend that, regardless of the actual facts, disaffiliation of a local union constitutes dissolution or disbandment as a matter of law.  To this end, Defendants argue that "case after case, including two from the Third Circuit[, have] held that if a local union disaffiliates from a parent body, [its] assets . . . are forfeited to the parent union if its constitution provides for forfeiture of an

---

[17] See ECF No. 68, Defendants' Concise Statement of Undisputed Material Facts at ¶ 25 ("On May 8, 2019, . . . the local disbanded and the charter of UWUA Local 537 was revoked.").  It appears that Plaintiff intended to admit the truth and materiality of this averment, although due to apparent typographical error the admission in Plaintiff's response refers to the wrong statement of fact.  See ECF No. 77, Plaintiff's Response to Defendants' Concise Statement of Material Facts at ¶ 25 ("Defendants' Concise Statement of Fact No. 21 is admitted and material.").

affiliate's assets upon dissolution."  ECF No. 74, Defendants' Response at 4, citing *Tile, Marble, Terrazzo, Finishers, Shopworkers & Granite Cutters Int'l Union v. Loc. 32*, 896 F.2d 1404 (3d Cir. 1990) and *Boilermakers v. Local D504*, 866 F.2d 641 (3d Cir. 1989).  However, in both of the cited cases the Court found the forfeiture-on-dissolution clause triggered, not by the local's disaffiliation from the parent union, but by mass resignations which left the local without members.  *See Tile, Marble*, 896 F.2d at 1410; *Local D504*, 866 F.2d at 643.  In the present case, in contrast, the members of UWUA 537 did not resign.  Indeed, Defendants concede that "[a]fter the purported disaffiliation vote, . . . Local 537 continued to represent all its members in 21 bargaining units . . . ."  ECF No. 74, Defendants' Response at 1.

*Loc. 450* considered the effect of a disaffiliation vote under a substantively identical constitutional provision to Art. VIII, Sec. 4.[18]  In concluding that the disaffiliating local "retains its status as an independent local union, and is not required to forfeit its assets to the International", the court distinguished *Tile, Marble* and *Boilermakers* on the ground that "[i]n those cases, the constitutional provisions at issue expressly provided for forfeiture in the situations presented."  *Loc. 450*, 30 F. Supp. 2d at 580 & n.6 (characterizing *Tile, Marble* decision as "forfeiture upheld where members of local voted to resign rather than disaffiliate").

Other courts that have had occasion to consider whether disaffiliation (or withdrawal, secession or the like) amounts to disbandment for purposes of a forfeiture clause have concluded that it does not.  For example, in *Delaney*, the Washington Supreme Court held that in voting to

---

[18] *See Loc. 450*, 30 F. Supp. 2d at 580 ("Article XVII, § B of the IUE constitution provides that '[i]n the event that a local's charter is revoked, or that a local disbands or dissolves, the local's secretary and trustees shall send to the Secretary–Treasurer all funds and property belonging to the local.'").

disaffiliate from its International, a local union "secedes, but does not disband", and hence does not trigger a constitutional provision under which its assets "shall become the property of the International" if the local is "suspended" or "disbanded".  *Delaney*, 73 Wash. 2d at 969-70, 442 P.2d at 259.  As the *Delaney* court explained, "[a]ccording to Merriam-Webster Third International Dictionary (1964), to 'disband' means to break up, to scatter, to disperse.  No word such as 'withdraw,' 'secede,' or 'disaffiliate' is given as a synonym."  *Id.*, 73 Wash. 2d at 971, 442 P.2d at 260.  *See also Boilermakers v. Loc. Lodge D238*, 865 F.2d 1228, 1235 (11th Cir. 1989) (local unions "did not disband upon the disaffiliation vote"); *McCarty*, 224 Mass. at 524, 113 N.E. at 273 (holding that subordinate body which seceded from parent association "did not disband" for purpose of forfeiture provision); *Loc. 1140 v. United Elec., Radio & Mach. Workers of Am.*, 232 Minn. 217, 229, 45 N.W.2d 408, 414 (1950) ("As one court has aptly stated with reference to the effect of a local union being expelled from affiliation to the Knights of Labor, 'There has been a divorce, but that is quite different from a death.'") (quoting *Wells v. Monihan*, 129 N.Y. 161, 166, 29 N.E. 232, 233 (1891); *Note: Associations – Union Funds – Local Union, Upon Secession from Parent Affiliate, Held Entitled to Retain Funds Paid in by Members*, 62 Harv. L. Rev. 507 (1949) ("[W]here the local changes affiliation but keeps the original union entity intact, a forfeiture clause providing only for the eventuality of dissolution or disbandment will not apply.").

## 5.  Termination of Forfeiture Clause

Fifth, Art. VIII, Sec. 4 was no longer applicable to UWUA 537 when UWUA 537 disbanded and its charter was revoked in May, 2019.  Under "ordinary principles of contract law", which govern interpretation of labor agreements absent inconsistency with federal labor policy, contractual rights and duties do not survive termination of the contract.  *M & G Polymers*

*USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015); *see id.* at 441–42 ("the traditional principle [is] that 'contractual obligations will cease, in the ordinary course, upon termination of the . . . agreement.'") (quoting *Litton Financial Printing Div., Litton Business Systems, Inc. v. NLRB,* 501 U.S. 190, 207 (1991)).  Here, UWUA 537 ceased to be bound by the Constitution on or shortly after March 19, 2018, when UWUA received notice of the result of UWUA 537's disaffiliation vote.[19]  The Court finds nothing in the Constitution or elsewhere which would support a determination that the parties intended Art. VIII, Sec. 4 to survive for a year or more after termination of their contractual affiliation.[20]

## C.  Trusteeship

Section 302 of the LMRDA permits imposition of a trusteeship by a labor organization over a "subordinate body", only "in accordance with the constitution and bylaws" of the parent organization and only "for the purpose of . . . carrying out the legitimate objects of such labor organization."  29 U.S.C. § 462.  *See Tile, Marble*, 896 F.2d at 1410-11 ("Section 302 envisions a parent union imposing a trusteeship only on a 'subordinate body' of that parent and only in

---

[19] *See* ECF No. 69-4, Appx. Ex D (May 4, 2018 Decision of UWUA Executive Board Subcommittee Re: Trusteeship of UWUA Local 537) at 8 (". . . Local 537's former attorney informed President Langford on March 21, 2018 that the membership had allegedly voted to disaffiliate with the UWUA in the evening of March 19, 2018 and become an independent labor organization.").

[20] Defendants have not sought to predicate their claim to UWUA 537's assets on Art. IV, Sec. 6-B (5) of the Constitution, which governs disposition of trusteed assets and provides that "[i]f . . . the local union . . . is dissolved by the revocation of its charter, then any balance remaining to the credit of the local union . . . shall be forwarded to the National Secretary-Treasurer and shall become the property of the National Union."  In any event, the same considerations addressed with respect to forfeiture under Art. VIII, Sec. 4 also entail that any right to forfeiture under Art. IV, Sec. 6-B (5) could not survive the March, 2018 disaffiliation in order to be triggered by the May, 2019 charter revocation.

conformity with the parent's constitution or bylaws."); Constitution Art. IV, Sec. 6-B (5) (mirroring § 302's enumeration of permitted purposes).

As mentioned above, the parties disagree as to whether UWUA's imposition of a trusteeship on UWUA 537 took place before or after the latter's disaffiliation from the former. But the Court has found that in either case the disaffiliation became effective, pursuant to the members' vote, between March 19 and March 21, 2018.  The Court further concludes that the trusteeship also became effective whether or not it was preceded by the disaffiliation, as that sequence would affect the validity of the trusteeship only for an inconsequential period.   More particularly:

If (as Plaintiff asserts) UWUA 537's disaffiliation took effect prior to imposition of the trusteeship, then UWUA 537 would no longer have been a subordinate body, and hence the trusteeship would have been void *ab initio*.  *See Tile, Marble*, 896 F.2d at 1413 (finding trusteeship invalid where "no subordinate body existed on which the International could impose a trusteeship"); *Union de Empleados de Muelles de Puerto Rico, Inc. ["UDEM"] v. Int'l Longshoremen's Ass'n*, 884 F.3d 48, 60 (1st Cir. 2018) ("If UDEM disaffiliated from the ILA prior to imposition of the trusteeship, it was no longer a 'subordinate body' and the ILA had no authority to impose the trusteeship.").

On the other hand, if the trusteeship was imposed prior to the disaffiliation (as Defendants contend), then the trusteeship would have been valid at the outset, provided that Defendants acted in accordance with procedures in the Constitution and for a proper purpose.  As to the former requirement, it appears that Defendants complied with the provisions of Art. IV, Sec. 6-B (6) of the Constitution by means of a Subcommittee of the UWUA Executive Board holding a hearing on April 12, 2018 and rendering a decision ratifying the trusteeship on May 4,

2018.[21]  As to the latter requirement, a proper purpose, the timing of UWUA's imposition of a

trusteeship might well support an inference that its principal purpose was prevention of UWUA

537's disaffiliation.[22]  Such a purpose is not a legitimate ground for trusteeship.[23]  However, the

_____

[21] *See* ECF No. 69-4, Appx. Ex. D at 3.  Some courts have held that § 302 of the LMRDA
implicitly requires a hearing prior to imposition of a trusteeship whenever feasible,
notwithstanding the absence of such a requirement in the parent organization's governing
documents.  See *Loc. Union 13410. v. United Mine Workers*, 475 F.2d 906, 915 (D.C. Cir. 1973)
("Absent a reasonable belief in the necessity for immediate action, all practical steps must be
taken to afford a hearing before a trusteeship is imposed.  A trusteeship may be imposed without
a hearing only where a parent union could reasonably believe that an emergency situation does
not allow time for such a hearing."); *Loc. 770 v. Retail Clerks Int'l Ass'n*, 479 F.2d 54, 55 (9th
Cir. 1973) ("Congress recognized that the imposition of a trusteeship is an extraordinary
intrusion into the affairs of a local union.  Such a step should not be taken without a prior
hearing, absent some necessity for immediate action.").  *Cf. Markham v. Int'l Ass'n of Bridge,
Structural & Ornamental Iron Workers*, 901 F.2d 1022, 1028 (11th Cir. 1990) ("The standard in
this Circuit is . . . . that the decision of whether to allow a trusteeship prior to a hearing is a
matter of discretion for the district court.").  At least one court within the Third Circuit has
"recognize[d] that the better view requires that a local be afforded a hearing prior to the
imposition of a trusteeship absent special circumstances."  *Plentty v. Laborers' Int'l Union*, No.
69-918, 1973 WL 1195, at *2 n.3 (E.D. Pa. Apr. 27, 1973).  *But see C.A.P.E. Loc. 1983 v. Int'l
Bhd. of Painters & Allied Trades*, 598 F. Supp. 1056, 1068 (D.N.J. 1984) ("There seems to be no
requirement . . . that the hearing occur prior to the imposition of the trusteeship for the
trusteeship to be valid.  . . . .  [T]he IBPAT constitution contemplates the possibility of a
trusteeship imposed prior to hearing, . . . followed by a hearing within 30 days of the imposition.
There is nothing infirm about this procedure.").  If a pre-trusteeship hearing were required, the
record does not reflect emergency circumstances that would have precluded such a hearing.  *Cf.
Tile, Marble, etc. v. Granite Cutters Loc. 106*, 621 F. Supp. 1188, 1193 (E.D.N.Y. 1985), *aff'd*,
805 F.2d 391 (2d Cir. 1986) ("the imminent disaffiliation of Local 106 did not constitute an
emergency warranting imposition of a trusteeship without a hearing").  However, in view of its
disposition of other issues in this action, the Court finds it unnecessary to decide whether an
advance hearing is required when feasible.

[22] As recited above, after learning of UWUA 537's impending disaffiliation vote on Friday,
March 16, 2018, UWUA convened its Executive Committee on a conference call on Sunday,
March 18, just in time for Langford to impose an emergency trusteeship prior to the scheduled
March 19 vote.  *See* ECF No. 69-4, Appx. Ex. D at 2, 8; ECF No. 69-12, Appx. Ex. L at ¶¶ 35-
36.

[23] *See UDEM*, 884 F.3d at 64 ("courts have widely recognized that preventing disaffiliation is
not a proper purpose under § 462 for the imposition of a trustee") (quoting *AFL-CIO Laundry &
Dry Cleaning Int'l Union v. AFL-CIO Laundry*, 70 F.3d 717, 719 (1st Cir. 1995)); *Loc. 450*, 30
F. Supp. 2d at 578 n.3 ("the federal courts have made clear that it is not within the legitimate

presence of an improper purpose is not fatal to the validity of a trusteeship so long as there is at least one proper purpose. *See, e.g.*, *Mason Tenders Dist. Council of Greater New York v. Laborers' Int'l Union of N. Am.*, 884 F. Supp. 823, 836 (S.D.N.Y. 1995) ("One legally permissible purpose is all that is required for a valid trusteeship.") (citing *National Assoc. of Letter Carriers v. Sombrotto,* 449 F.2d 915, 923 (2d Cir.1971) and *C.A.P.E. Local 1983,* 598 F. Supp. at 1075). Here, Defendants have identified assuring UWUA 537's participation in negotiations for the National Benefits Agreement with American Water as a purpose of the trusteeship.[24] This purpose amounts to "assuring the performance of collective bargaining agreements or other duties of a bargaining representative . . . or otherwise carrying out the legitimate objects of such labor organization" as permitted under § 302 of the LMRDA, 29 U.S.C.A. § 462. Consequently, if UWUA 537 was still a subordinate body when the trusteeship was imposed, it appears that UWUA's imposition of the trusteeship was a valid exercise of its authority. *Cf.* § 304(c) of the LMRDA, 29 U.S.C.A. § 464(c) (trusteeship established in conformity with procedural requirements and ratified after fair hearing "shall be presumed valid . . . and shall not be subject to attack . . . except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462").

In either case, UWUA 537's disaffiliation from UWUA took effect not later than March 21, 2018. Whether the trusteeship was initially void or valid, UWUA 537 was no longer a subordinate body of UWUA, and UWUA had no legitimate purpose for controlling UWUA 537's affairs. The precise early interval of invalidity of the trusteeship remains of no ultimate

---

purposes set forth in LMRDA section 302, 29 U.S.C. § 462, for an international union to impose a trusteeship in order to prevent the disaffiliation of one of its locals").

[24] *See* ECF No. 69-3, Appx. Ex. C at 1; ECF No. 69-4, Appx. Ex. D at 4 – 10.

import, however, because about one month later – on April 24, 2018 –the legality of the

trusteeship was established or re-established by virtue of the Preliminary Injunction;[25] and during

that intervening month, so far as the record reveals, the trusteeship had been ineffectual due to

the non-cooperation of UWUA 537's officers.  By granting possession of UWUA 537's assets to

Duffy and forbidding UWUA 537's officers to perform their roles as such, the Preliminary

Injunction effectively ratified imposition of the trusteeship.  From April 24, 2018 until the

Trusteeship Action was voluntarily dismissed on March 6, 2019,[26] Duffy was entitled to

possession of the Assets by consent and the authority of this Court.  As of March 6, 2019,

however, the Preliminary Injunction automatically terminated, and the trusteeship became

invalid.  *See Rodriquez v. 32nd Legislature of Virgin Islands*, 859 F.3d 199, 207 (3d Cir. 2017)

("[a] preliminary injunction cannot survive the dismissal of a complaint.") (quoting *Venezia v.*

*Robinson*, 16 F.3d 209, 211 (7th Cir. 1994)) (brackets in *Rodriquez* opinion).

### D.  LMRDA Restriction on Transfer of Trusteed Assets

In enacting § 303 of the Labor Management Reporting and Disclosure Act of 1959

("LMRDA"), 29 U.S.C. § 463, Congress sought to curtail use of the trusteeship power to "milk"

subordinate local unions' funds.  *See McDonald v. Oliver*, 525 F.2d 1217, 1228–29 (5th Cir.

1976) ("Congress recognized that trusteeships had, at times, been used as a means of . . .

plundering and dissipating the resources of local unions"); *Jolly v. Gorman*, 428 F.2d 960, 966

(5th Cir. 1970) ("Congress particularly wished to prohibit . . . looting of treasuries by the

international's officers and the trustee").[27]  To that end, § 303 provides in part:

---

[25] ECF No. 69-13, Appx. Ex. M.

[26] *See* ECF No. 81-2, Appx. Ex. 25.

[27] *See also, e.g.*, U.S. Dept. of Labor, Trusteeship Requirements under the LMRDA and the CSRA, https://www.dol.gov/agencies/olms/compliance-assistance/trustee-requirements

> During any period when a subordinate body of a labor organization is in trusteeship, it shall be unlawful . . . to transfer to such organization any . . . funds of the subordinate body except the normal per capita tax and assessments payable by subordinate bodies not in trusteeship: Provided, That nothing herein contained shall prevent the distribution of the assets of a labor organization in accordance with its constitution and bylaws upon the bona fide dissolution thereof.

29 U.S.C. § 463(a)(2).[28]

The Court does not understand Defendants to contend that UWUA 537 was not a "subordinate body" in trusteeship under the LMRDA. Indeed, Defendants sought and obtained the injunctive aid of this Court to obtain the Assets by express invocation of the LMRDA.

Defendants might contend that by virtue of their revocation of UWUA 537's charter, at the time Duffy transferred the Assets to UWUA, UWUA 537 was no longer a subordinate body, or no longer in trusteeship, or that the transferred funds were no longer funds of the subordinate body. However, if the prohibition of § 303(a)(2) were deemed to terminate upon dissolution of a subordinate body there would be no need for the proviso permitting distribution of the subordinate body's assets in accordance with its constitution and bylaws. That language cannot be read as mere surplusage.[29] Rather, construing § 303 to effectuate its manifest purpose in light

---

[28] (accessed Jan. 15, 2022) ("During hearings held prior to the enactment of the LMRDA, . . . Congress became aware that the power to impose a trusteeship was sometimes used to 'milk' local treasuries . . . . The LMRDA therefore contains provisions for civil and criminal enforcement to correct abuses, but it neither prohibits nor discourages the reasonable and legitimate use of trusteeships."); J. Ralph Beaird, Union Trusteeship Provisions of the Labor-Management Reporting and Disclosure Act of 1959, 2 Ga. L. Rev. 469, 478 n.43 (1968) ("For the legislative remedy to the 'milking' evil, see LMRDA § 303(a)(2), 29 U.S.C. § 463(a)(2) (1964).").

[28] The gravity of the fund transfer prohibition in the contemplation of Congress is reflected in § 303(b), which provides that "[a]ny person who willfully violates this section shall be fined not more than $10,000 or imprisoned for not more than one year, or both." 29 U.S.C. § 463(b).

[29] "Under the basic tenets of statutory construction, . . . attention must be addressed to the entirety of a text, with a view to avoiding interpretations that would render any phrase superfluous." *U.S. v. Landmesser*, 378 F.3d 308, 312-13 (3d Cir. 2004). *See also, e.g.*, *Duncan*

of all of its provisions, the Court concludes that once established, the trusteeship and the associated transfer prohibition must be deemed to subsist at least so long as the trustee retains control over any assets that are or were funds of the subordinate body.  Thus, § 303(a)(2) expressly prohibited Duffy from transferring the Assets to UWUA unless (i) there was a "bona fide dissolution" of UWUA 537, and (ii) the transfer was in accordance with *UWUA 537's* constitution and bylaws.

As to the first requirement, it is by no means clear that UWUA's revocation of UWUA 537's charter, or its unilateral reassignment of UWUA 537's remaining members to other local unions, gave rise to a bona fide dissolution of UWUA 537 within the contemplation of § 303. Congress's insertion of the qualifier "bona fide" signals that a merely technical "dissolution", or one orchestrated by the parent organization using its trusteeship powers, may not suffice.

The Court need not decide the bona fide dissolution issue, however, as it is clear that Defendants cannot satisfy the second requirement: authorization by UWUA 537's constitution and bylaws.  Defendants rely upon provisions in UWUA's own Constitution which purport to authorize transfer of the Assets to UWUA.[30]  However, the proviso to § 303 only allows distribution in accordance with the subordinate body's constitution and bylaws.[31] Defendants do not point to any provision in UWUA 537's Constitution and Bylaws that would authorize

---

*v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute. . . . .  We are thus reluctant to treat statutory terms as surplusage in any setting.") (internal quotation marks and brackets omitted).

[30] *See* UWUA's Constitution Art IV, Sec. 6-B (5); Art. VIII, Sec. 4.

[31] *Cf. Collinsgru v. Palmyra Bd. of Educ.,* 161 F.3d 225, 232 (3d Cir. 1998) ("The canon of *expressio unius est exclusio alterius* means that explicit mention of one thing in a statute implies a congressional intent to exclude similar things that were not specifically mentioned.") (*quoted in Landmesser*, 378 F.3d at 314 n.8).

transfer of its assets to UWUA upon dissolution,[32] and this Court's own review reveals no such provision.  Indeed, as to at least part of the Assets – the "social funds" – the applicable provisions in UWUA 537's Bylaws appear flatly incompatible with such a transfer.[33]  In sum, the May, 2019 transfer of the Assets to UWUA was not in accordance with the Bylaws of UWUA 537, and was unlawful under § 303 of the LMRDA.

### E.  Fiduciary Breach

Even if (a) forfeiture provisions in the Constitution remained applicable to UWUA 537 when its charter was revoked in May, 2019 (which the Court concludes they did not); and even if (b) § 303 of the LMRDA did not forbid transfer of the trusteed Assets to UWUA (which the Court concludes it did, due to absence of authority in the Bylaws), UWUA would nevertheless be barred from retaining the Assets due to Defendants' breach of fiduciary duty.  Section 501 of the LMRDA provides in relevant part:

> The officers . . . of a labor organization occupy positions of trust in relation to such organization and its members as a group.  It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the

---

[32] The Court notes that the Constitution provides that "[a]ll local unions shall presently conform their existing bylaws with the National Constitution as now adopted or hereafter amended" (Art. III, Sec. 2), and that local unions "may adopt such bylaws and rules as do not conflict with any of the provisions of this National Constitution or the policies of the National Union" (Art. VII, Sec. 1).  However, such provisions do not explicitly mandate, let alone create, any particular terms in any local union's bylaws.  Compare Art. VII, Sec. 2 (mandating that "[l]ocal union bylaws must provide for ratification of any contracts . . . ").  Rather, the mechanism to enforce compliance is a requirement (Art. VII, Sec. 1) that local unions' bylaws must be submitted to the National President "for approval before they shall take effect".  In particular, UWUA 537's Bylaws recite that they were "Revised March 4, 2012" (ECF No. 66-10 at 2, Appx. Ex. 7), giving rise to an inference that the Bylaws were approved by UWUA's President as of that date (despite the absence therein of any provision for distribution of UWUA 537's assets to UWUA upon dissolution).

[33] *See* ECF No. 66-10, Appx. Ex. 7 (Bylaws) Art. 23, Sec. 3 ("Each District may establish a social fund . . . which shall be held by the System Local as a separate fund in trust for the proper District."); Sec. 4 ("These funds are strictly for social activity of said District.").

organization and its members . . . , [and] to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization . . . .

29 USCA § 501(a).

By virtue of their possession and exercise of executive authority over the affairs of UWUA 537, Duffy and Langford were considered "officers" of UWUA 537,[34] and consequently were charged with fiduciary duties toward UWUA 537 under § 501.  Moreover, while Duffy was the trustee and Langford was the trustee's supervisor, in the contemplation of the LMRDA it is "the organization" – UWUA – "which has assumed trusteeship over the subordinate body". LMRDA § 302, 29 U.S.C. § 462.

As fiduciaries of UWUA 537, Defendants owed a duty throughout the trusteeship to refrain from adverse dealings and conflicting interests with respect to UWUA 537.  If Defendants' contention that the trusteeship precluded effective disaffiliation were correct,[35] then Defendants would plainly have violated their duty of loyalty toward UWUA 537 by utilizing their trusteeship power to keep UWUA 537 affiliated and hence bound by the Constitution while

---

[34] *See* LMRDA § 3(n), 29 U.S.C.A. § 402(n) (defining "Officer" to include "any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization").  As trustee, Duffy was authorized to "take full charge of the affairs" of UWUA 537, to remove and temporarily appoint officers, and to take such other action as he deemed necessary to preserve UWUA 537's interest.  Constitution, Art. IV, Sec. 6-B (2).  Langford was authorized to supervise and control Duffy's conduct as trustee. *Id.*  Moreover, Langford undertook on his own authority to remove UWUA 537's officers and to authorize Duffy and others to represent UWUA 537 and to deal with financial institutions in UWUA 537's name.  Doc 69-3, Appx. Ex. C at 1, 3 (Mar. 19, 2018 Notice of Emergency Trusteeship and Letter of Authority).

[35] *See* ECF No. 74, Defendants' Response at 3 ("A disaffiliation vote could not occur unless the trustee granted permission.  The trustee did not do so . . . .").  As discussed above, the Court holds that the disaffiliation was effective despite imposition of the trusteeship.  The present discussion of fiduciary breach addresses an alternative ground for the Court's holding.

they proceeded to disband its membership and revoke its charter, thereby triggering forfeiture of its assets to UWUA.  Langford's and Duffy's simultaneous service as officers of UWUA 537 and of UWUA while the latter had a contingent interest in the former's Assets constituted a conflict of interest;[36] and their orchestration of a forfeiture of the Assets from the former to the latter would amount to dealing in behalf of an adverse party to UWUA 537.  Such a breach of fiduciary duty would have rendered UWUA's claim to forfeiture unenforceable.  *See e.g., Crocker v. Weil*, 227 Or. 260, 284, 361 P.2d 1014, 1025 (1961) ([M]aterial breach of . . . fiduciary duty can nullify the otherwise enforceable obligations of the intra-union compact.  . . . . We will not now reward the defaulting fiduciary with the gain sought as a result of that default.").

### F.  Standing

Defendants contend that Independent 537 lacks standing to pursue claims under § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185 on the ground that as an independent labor organization, Independent 537 is not a party to UWUA's Constitution, and has no third-party rights thereunder.[37]  As explained in this Court's Memorandum Opinion[38] denying Defendants' Motion to Dismiss this action for purported lack of subject-matter jurisdiction based upon the very same ground, § 301 explicitly permits a labor organization such as Independent 537 to "sue . . . in behalf of the employees whom it represents"; and Independent 537

---

[36] *Cf. United States v. Gambino*, 864 F.2d 1064, 1075 n.1 (3d Cir. 1988) (Mansmann, J., dissenting).

[37] *See* ECF No. 70 (Memorandum in Support of Defendants' Motion for Summary Judgment) at 6–7.

[38] ECF No. 38.

unquestionably represents several hundred members whose rights turn on interpretation of the UWUA Constitution, a "contract between labor organizations" within the contemplation of § 301. 29 U.S.C. § 185. *See Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71*, 502 U.S. 93, 101 (1991) ("[U]nion constitutions are an important form of contract between labor organizations. Members of a collective-bargaining unit are often the beneficiaries of such interunion contracts, and when they are, they likewise may bring suit on these contracts under § 301."); *Tile, Marble*, 896 F.2d at 1414 ("The International Constitution is, as a matter of law, a contract between the International and its subordinate bodies.") (citing *United Assoc. of Journeymen v. Local 334,* 452 U.S. 615, 619 (1981)).

Defendants rejoin that Independent 537 "cannot represent its members in an action on their behalf to take the assets of the UWUA and the former UWUA Local 537 because the assets were the UWUA's to which the former members have no legal interest in."[39]  Of course, that argument goes to the merits rather than to Plaintiff's standing. [40]

### G.  Successorship and Current Representation

Plaintiff claims to have succeeded to the property interests of UWUA 537 by virtue of the disaffiliation.  It is certainly plausible that the members of an unincorporated association such as UWUA 537 could elect as a body to change their name and taxpayer identification number (*i.e.*,

---

[39] ECF No. 70 at 8.

[40] Defendants also argue that Plaintiff lacks standing to assert claims under Titles III and V of the LMRDA (governing trusteeships and fiduciary duty, respectively).  *See* ECF No. 70 at 10. However, as Defendants observe, Plaintiff has not actually asserted claims under those Titles. The Court notes that the absence of separate claims for enforcement of rights under those Titles does not render them inapplicable as a source of positive law governing aspects of the dispute properly before the Court.

to change their associational "shell"), without the membership body losing its essence or abandoning its rights in property held in the former name.

Defendants contend that Independent 537's claim to be successor to UWUA 537 lacks merit, as that claim was rejected by the NLRB and the Third Circuit, and disavowed by Independent 537 itself.[41]  However, the Board and the Court of Appeals held that, under established precedent, the certification of Independent 537 as a new bargaining agent terminated the prior collective bargaining agreement as a matter of law.[42]  Neither the Board nor the Court had occasion to consider whether Independent 537 became a successor to UWUA 537 for any other purpose upon disaffiliation.  And in settling the Unfair Labor Practice Charges at issue in the NLRB decision, Independent 537 merely admitted that "it is not a successor to the prior certified union under the [NLRA]."[43]  As this Court noted in its ruling on Defendants' Motion to Dismiss, "successorship for such a purpose is not necessarily the same as successorship for determining rights under a contract" between UWUA and UWUA 537.[44]  Moreover, the NLRB implicitly acknowledged that Independent 537 might have been a successor even for collective bargaining purposes when it suggested that instead of petitioning for certification as a new bargaining agent, Independent 537 could have filed "petitions to amend *its* certifications to reflect such disaffiliation".[45]  That Independent 537 chose to pursue other certification elections is, therefore, not dispositive.

---

[41] *See* ECF No. 74, Defendants' Response at 1.

[42] *See* ECF No. 69-9, Appx. Exs. I-1, I-3.

[43] ECF No. 69-9, Appx. Ex. I-2.

[44] ECF No. 38 at 7.

[45] ECF No. 69-9, Appx. Ex. I-1 (emphasis added).  *Cf. Hamilton Tool Co.*, 190 NLRB 571, 575 (1971) (Although, after membership adopted new affiliation under new local union name, predecessor certified union continued to exist, and to hold bank accounts and checkoff

If Independent 537 did become the legal successor to UWUA 537 as a result of the disaffiliation, however, it would have done so by the will of the membership, as manifested in the disaffiliation vote.  And that may well be what the members of UWUA 537 attempted.[46]  But the disaffiliation ballot falls short of clearly evidencing or implementing that intent.  It refers to Independent 537 as a "new association" (rather than as a new name for the existing association).  And although it contemplates continuity on important concerns indicative of successorship – membership, contracts,[47] officers, dues and dues checkoffs – it makes no mention of UWUA 537's Assets or of its continuing existence *vel non*.  *See* ECF No. 66-16, Appx. Ex. 12 (ballot).  Moreover, Plaintiff has not pointed to any caselaw or other authority holding that assets of a prior association automatically pass to a (functionally equivalent) new association when the membership of the former migrates *en masse* to the latter.  The Court holds, therefore, that Plaintiff has not established its ownership of the Assets as successor to UWUA 537.

Plaintiff's inability to prevail on its successorship theory is not, however, wholly fatal to its claim to the Assets.  In light of the invalidity of UWUA's forfeiture claim, and the silence of the Bylaws with respect to distribution of the Assets upon UWUA 537's dissolution, the Court further finds that Plaintiff is entitled to a share of the Assets as representative of its members.

In view of the equitable nature of the assets at issue, as discussed below, it suffices that Independent 537 and its officers are appropriate representatives for the beneficial interests of a

---

authorizations in its name, and its members did not resign, Board concluded that "[i]n fact, the certified Union has now become the Petitioner.  [T]he Petitioner is, in legal effect, no more than an organizational continuity of the Federation."); *id.* (granting amendment of certification to substitute new local name as bargaining representative).

[46] *See* ECF No. 66-16 (Appx. Ex. 12) (disaffiliation ballot).

[47] Of course, as it turned out, the anticipated continuity of "union contracts" did not occur.  *See* ECF No. 69-9, Appx. Ex. I.

substantial subgroup of the former members of UWUA 537, *i.e.*, those who are now members of Independent 537.  On the other hand, Independent 537 and its officers have not meaningfully represented the other former members of UWUA 537 – those who are now members of UWUA Locals 433 and 648 – since entry of the Preliminary Injunction in April, 2018.  In fashioning an equitable remedy, the Court must take into account the beneficial owners' current representation.

To that end, the case of *Boilermakers v. Loc. Lodge 714* is instructive, as the facts are markedly similar to those in the present case (albeit the contractual provisions are materially different).[48] The members of Local 714 overwhelmingly voted to disaffiliate from the Boilermakers International union by resignation from their affiliated Local and the formation of a new Local 15 (affiliated with a new International) comprised of most or all of Local 714's members.  Local 15 then successfully petitioned the NLRB for election as the collective bargaining representative in place of Local 714.  The Boilermakers International imposed a trusteeship on Local 714 and sought an injunction requiring its former officers to turn over its assets to the trustee.  *See Boilermakers v. Loc. Lodge 714*, 845 F.2d 687, 690-91 (7th Cir. 1988) (Posner, J.).  On appeal, the Seventh Circuit held that the trusteeship may have been invalid owing to a dissolution and forfeiture clause in the Boilermakers constitution that contained a ten-member floor.  It remanded the case to the District Court for a determination of how many members remained in Local 714 following the disaffiliation-by-resignation.  *See id.* at 692, 695.

Although the Court of Appeals stated that if the District Court were to vacate the trusteeship, it "presumably should order the trustee to hand over the books and money of Local

---

[48]  *See supra* at 12 (noting that in the *Tile, Marble* and *Boilermakers* cases the National unions' constitutional forfeiture-on-dissolution clauses were triggered not by the local's disaffiliation from the parent union but by mass resignations).

Lodge 714 to the International" (in accordance with the constitution's forfeiture provision), *id.* at 695, the Boilermakers International did not assert a claim for forfeiture of the assets. Accordingly, the District Court held:

> Because the trusteeship declared by International is invalid by virtue of Local 714's dissolution, the assets are no longer properly controlled by the trustee. Thus, defendants,[49] as agents of the former members of the now defunct Local 714, are entitled to receive the assets . . . .

*Boilermakers v. Loc. Lodge 714*, 696 F. Supp. 391, 394 (N.D. Ill. 1988).  That is, upon finding that the parent union was not entitled to Local 714's assets, the District Court determined that the former officers of Local 714, in their capacities as current representatives of the former members, were entitled to the assets.[50]  *See also Boilermakers v. Loc. Lodge D129*, 910 F.2d 1056, 1062 (2d Cir. 1990) (holding that portion of defunct local union's assets that do not belong to International "should . . . be returned to the reconstituted local in whatever form it now exists").

## H.  Equitable Character of Union Assets

In enacting fiduciary and trusteeship provisions of the LMRDA to safeguard union members' funds, Congress recognized that "[t]he assets of a labor union belong to the members."[51]  As elaborated in the LMRDA legislative history,

---

[49] As described by the Seventh Circuit, "defendants" were "nominally Local Lodge 714 and its former officers, really Local 15 and its current officers (the same people)".  *Boilermakers v. Loc. Lodge 714*, 845 F.2d at 691.

[50] The *Loc. Lodge 714* District Court's "precautionary" direction that the former officers keep Local 714's assets separate in case the international union should assert and prevail on a forfeiture claim, 696 F. Supp. at 394-95, is of no moment to the present action.

[51] 105 Cong. Rec. 15,549 (1959) (remarks of Representative Elliott), quoted in Clark, R. Theodore, Jr., "The Fiduciary Duties of Union Officials under Section 501 of the LMRDA", 52 Minnesota L. Rev. 437, 441 (1967); U.S. Dept. of Labor, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 1059-60 (1964).

> The members of a labor organization are the real owners of the money and
> property of such organizations and are entitled to a full accounting of all
> transactions involving such money and property. Because union funds belong to
> the members they should be expended only in furtherance of their common
> interest.

H.R. Rep. No. 741 at 2430 (1959), reprinted in 1959 U.S.C.C.A.N. 2318, 2324 (quoted in *United States v. Goad*, 490 F.2d 1158, 1162 (8th Cir. 1974)).[52]

In view of this legislative history, Courts applying the LMRDA have held that union funds "should be treated as trust funds belonging to the union's members". *United States v. Hartsel*, 199 F.3d 812, 819 (6th Cir. 1999), quoting *Goad*, 490 F.2d at 1162. This holding is consistent with the long-held views of state courts addressing the ownership of local unions' funds. *See Becherer*, 142 N.J. Eq. at 567, 61 A.2d at 20 ("The property accumulated by the local union from contributions made by the individual members is a trust fund for the benefit of those members, and though the legal title to such property may be vested in the officers of the local, such ownership is of a trust character for the use of the individual members."); *Bradley v. O'Hare*, 11 A.D.2d 15, 28–29, 202 N.Y.S.2d 141, 154 (1960) ("On this analysis, the entire union structure in its several layers is viewed as a fiduciary one. . . . . [T]he beneficial use of the assets is in the worker members, not in the organizational entity which exists solely for their benefit."); *Auto Workers Local 646 v. Wells Mfg. Corp.*, 1951 BL 90, 28 LRRM 2656 (Cir. Ct. Wis. 1951) (funds accumulated from dues checkoffs "must be treated as a trust fund for the members comprising the local union").

Defendants assert that "union members have no right to the assets of their union". ECF 70 at 7. However, the cases relied upon by Defendants for this assertion are patently

---

[52] *Cf. Goad*, 490 F.2d at 1162 n.6 (explaining why "House Report No. 741 is . . . proper legislative source material to ascertain Congress' purpose in passing [LMRDA] § 501").

distinguishable, in that they concern *title* to funds derived from union dues, rather than beneficial

interest.  *See In re Pro. Air Traffic Controllers Org. (PATCO)*, 724 F.2d 205, 209 (D.C. Cir.

1984) ("Union dues are the union's property; . . . they . . . belong, upon payment, to the union,

not severally to the individual dues payers."); *Murray v. Laborers Union Loc. No. 324*, 55 F.3d

1445, 1455 (9th Cir. 1995) ("The Union did not have mere lawful possession of Murray's dues, it

also had lawful *title* to them.") (italics in original); *In re Gen. Teamsters, Warehousemen &*

*Helpers Union, Loc. 890*, 265 F.3d 869, 876 (9th Cir. 2001) ("The members cannot share in any

profits from the Local or control its assets. On the contrary: once dues are paid, they become the

property of the local union.") (citing *PATCO*).  The Court is not persuaded that these cases

support Defendants' contention that union members have "no right" in the assets of their local

union.

In addition, although the general funds of a local union belong beneficially to all of its

members in common, certain of the Assets at issue herein – the "social funds" – were held by

UWUA 537 and its officers for the sole benefit of the members of the District that established

each particular fund.[53]  According to a leading annotation:

> Moneys raised for purely local purposes, such as local expense funds or local
> funeral funds are not considered to be controlled by the twofold contract which
> binds the parent organization and local as well as the local and its members, and,
> accordingly, the parent organization cannot deprive a withdrawing local of any
> special funds, regardless of any provision in the constitution requiring forfeiture
> of the property of the local in the event of withdrawal.

23 A.L.R.2d 1209 (1952) (citing *Emery* as "[t]he leading case in this group").

---

[53] *See* n.33, *supra*.

## IV.     Remedy

UWUA 537's membership resolved, as one body, to sever ties with UWUA and carry on their association as an independent union.  They were impeded in that attempt by the acts of Defendants.  About half of them – the current members of Independent 537 – carried out the majority's decision.  And the other half have long since become members of UWUA Locals 648 and 433.  Under the circumstances, it would be inequitable to hold that either group has forfeited its share of beneficial rights in the Assets of former Local, UWUA 537.  The Court therefore finds that upon its May, 2019 dissolution the equitable ownership of the Assets followed UWUA 537's membership into its several representative destinations.[54]

In the absence of any provision in the Bylaws governing disposition of UWUA's Assets upon dissolution, the Court will order an equitable distribution of the Assets in accordance with the following directives:[55]

---

[54] *Cf. Ross v. Hotel Emps. & Rest. Emps. Int'l Union*, 266 F.3d 236, 257 (3d Cir. 2001) ("Relief under [LMRDA Title III] must be sought on behalf of the local union organization and the entire membership must reap the benefits.").

[55] The Court notes that in addition to recovery of the Assets, Plaintiff has requested punitive damages and counsel fees.  *See* ECF No. 17 at 10, 13, 16.  These requests are unwarranted in an action for breach of contract under § 301 of the LMRA, and will therefore be denied.  With respect to punitive damages, the Third Circuit has explained:

> [N]umerous labor law decisions . . . refus[e] to impose punitive sanctions . . . .
> Punitive damages have been consistently rejected . . . in actions arising under §
> 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, *United Shoe
> Workers v. Brooks Shoe Mfg. Co*., 298 F.2d 277 (3d Cir. 1962) (*per curiam en
> banc*), in which Chief Judge Biggs, concurring, found that "it is the general policy
> of the federal labor laws, to which the federal courts are to look for guidance in
> Section 301 actions, to supply remedies rather than punishments." *Id*. 284.

*Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005, 1019 (3d Cir. 1977).  With respect to counsel fees, the Third Circuit has held that "no statute authorizes fee shifting in section 301

1. Defendants will account for the Assets, including all funds, investments and property of UWUA 537 possessed or controlled by Defendants at any time, including any accretions, earnings, and expenditures.

2. Defendants will propose to the Court, and Plaintiff will counter-propose, an allocation of the Assets between the subgroup of former UWUA 537 members now represented by Independent 537, and the subgroup now represented by UWUA.

3. The allocation is to be guided by the following principles:

   a. Books and records of a particular bargaining unit or District of UWUA 537 are to be allocated to the union (UWUA or Independent 537) that now represents that bargaining unit or District.

   b. "Social funds" attributable to a particular District are to be allocated to the union that now represents that District.

   c. General funds, investments and earnings are to be allocated to UWUA and Independent 537 in proportion to the historical contributions to UWUA 537's funding of the bargaining units now represented by each union.

   d. Expenditures for the separate benefit of one or more particular bargaining units or Districts are to be allocated against the union that now represents such bargaining unit(s) or District(s).

---

cases", and "absent a contract or a statute authorizing fee shifting, the claim for attorneys' fees as damages falls squarely within the American rule that each party to a lawsuit pay its own attorneys' fees." *Ames v. Westinghouse Elec. Corp.*, 864 F.2d 289, 293 (3d Cir. 1988).

e.  General expenditures are to be allocated against UWUA and Independent 537 in proportion to the historical contributions to UWUA 537's funding of the bargaining units now represented by each union which were represented by UWUA 537 at the time of the expenditure.

4.  This Court will approve a final allocation of UWUA 537's Assets between UWUA and Independent 537; whereupon it will order Defendants to transfer to Plaintiff the portion of the Assets allocated to Independent 537.

An appropriate Order will follow.

Dated: January 27, 2022

BY THE COURT:

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc:  All Counsel of Record
     Via Electronic Mail